**No. 21-2121**

# In the United States Court of Appeals for the Federal Circuit

MYLAN PHARMACEUTICALS INC.,
*Appellant*,

*v.*

MERCK SHARP & DOHME CORP.,
*Appellee*.

Appeal from the Patent Trial and Appeal Board
No. IPR2020-00040

**REPLY BRIEF OF APPELLANT**

Eric T. Werlinger
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, NW – Suite 200
Washington, DC 20007
Tel.: 202-625-3500
eric.werlinger@katten.com

Deepro R. Mukerjee
Lance A. Soderstrom
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022
Tel.: 212-940-6330
deepro.mukerjee@katten.com
lance.soderstrom@katten.com

*Counsel for Appellant Mylan Pharmaceuticals Inc.*
(*Additional counsel on the signature block*)

March 21, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 5

I. WO ’498 and the ’871 Patent Anticipate the Sitagliptin DHP Salt Claimed by the ’708 Patent. .......... 5

A. The Board and Merck Are Wrong on the Law .......... 5

B. Under the Correct Legal Standard, the Board’s Anticipation Analysis Is Unsustainable. .......... 9

II. Claims 1-2, 17, 19, and 21-23 Do Not Antedate WO ’498. .......... 16

A. WO ’498 Claims Hydrates of Sitagliptin DHP. .......... 16

B. WO ’498 Is Presumptively Enabled, and Merck Never Rebutted that Presumption. .......... 19

III. Claims 3 and 4 of the ’708 Patent Are Obvious. .......... 22

A. Claim 3 Is Obvious Over WO ’498 and Bastin. .......... 23

B. Claim 4 Is Obvious Over WO ’498 and Brittain. .......... 24

CONCLUSION .......... 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*,
759 F.3d 1285 (Fed. Cir. 2014)....................18

*Blue Calypso, LLC v. Groupon, Inc.*,
815 F.3d 1331 (Fed. Cir. 2016)....................12, 13

*Bocciarelli v. Huffman*,
232 F.2d 647 (C.C.P.A. 1956)....................18

*Cohesive Technologies, Inc. v. Waters Corp.*,
543 F.3d 1351 (Fed. Cir. 2008)....................23

*Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*,
471 F.3d 1369 (Fed. Cir. 2006)....................7, 8

*Genentech, Inc. v. Hospira, Inc.*,
946 F.3d 1333 (Fed. Cir. 2020)....................15

*Hewlett-Packard Co. v. Mustek Systems, Inc.*,
340 F.3d 1314 (Fed. Cir. 2003)....................8, 9

*Impax Laboratories, Inc. v. Aventis Pharmaceuticals Inc.*,
468 F.3d 1366 (Fed. Cir. 2006)....................3, 4, 6, 7, 19

*In re Antor Media Corp.*,
689 F.3d 1282 (Fed. Cir. 2012)....................19

*In re Clarke*,
356 F.2d 987 (C.C.P.A. 1966)....................3, 17, 19

*In re Gleave*,
560 F.3d 1331 (Fed. Cir. 2009)....................16

*In re Petering*,
301 F.2d 676 (C.C.P.A. 1962)....................7, 8

*In re Preda*,
401 F.2d 825 (C.C.P.A. 1968) .......... 11, 12

*In re Ruschig*,
343 F.2d 965 (C.C.P.A. 1965) .......... 10

*In re Schaumann*,
572 F.2d 312 (C.C.P.A. 1978) .......... 6

*In re Steed*,
802 F.3d 1311 (Fed. Cir. 2015) .......... 16, 17

*In re Wands*,
858 F.2d 731 (Fed. Cir. 1988) .......... 4, 21, 22

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
780 F.3d 1376 (Fed. Cir. 2015) .......... 12

*Millennium Pharmaceuticals, Inc. v. Sandoz Inc.*,
862 F.3d 1356 (Fed. Cir. 2017) .......... 25

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008) .......... 12

*Perricone v. Medicis Pharmaceutical Corp.*,
432 F.3d 1368 (Fed. Cir. 2005) .......... 2, 6, 8

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007) .......... 13, 14, 22, 24

*Sanofi-Synthelabo v. Apotex, Inc.*,
550 F.3d 1075 (Fed. Cir. 2008) .......... 13, 14

*Trustees of Boston University v. Everlight Electronics Co., Ltd.*,
896 F.3d 1357 (Fed. Cir. 2018) .......... 20

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
683 F.3d 1356 (Fed. Cir. 2012) .......... 2, 11

## INTRODUCTION

Merck wants the Court to believe this appeal is a mine-run, substantial-evidence review of an IPR decision. But it is not. The Board's decision is infected by legal error that this Court must review de novo. Merck's attempt to defend the Board's decision proves this point.

Consider anticipation. WO '498 explicitly claims sitagliptin and its pharmaceutically acceptable salts. It further encourages the skilled artisan to form these salts using phosphoric acid, which it lists as a "[p]articularly preferred" acid for creating pharmaceutically acceptable salts.[1] Yet Merck contends (at 38) these specific, on-point disclosures are not the appropriate starting point for an anticipation analysis, because the reference does not place "emphasis on sitagliptin" and the elements are taught in two separate lists. Instead, Merck would have the skilled artisan start with a broader genus of compounds (Formula I) taught by WO '498, forcing the artisan to envision hundreds—and potentially millions—of possible salts in order to anticipate sitagliptin DHP. But Merck's position violates settled circuit law

[1] Like Merck, Mylan refers here to WO '498 and the '871 Patent together as "WO '498" to eliminate redundancy and enhance readability. All acronyms and defined terms have the same meaning assigned to them in Mylan's Opening Brief.

multiple times over. This Court has long "reject[ed] the notion" that a teaching in the prior art "cannot anticipate because it appears without special emphasis in a longer list." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005). And it has also rejected the idea that "a prior art reference is not anticipatory if one of ordinary skill in the art would be required to pick items from two lists of components in order to assemble the invention." *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1360-61 (Fed. Cir. 2012).

The Board's anticipation analysis suffers from the same errors, which is precisely why it is wrong as a matter of law. The Board started its anticipation analysis in the wrong spot (a broader disclosure), went down the wrong path (looking only at express disclosures in isolation), and predictably ended up in the wrong place. Under the correct view of the law, the only thing a skilled artisan would need to envision in order to anticipate the claimed 1:1 sitagliptin DHP salt is the compound's stoichiometry, and the skilled artisan easily could have done so.

Antedation is more of the same. The relevant claims of the '708 Patent recite sitagliptin DHP "or a hydrate thereof," Appx00091 (15:64-16:16), WO '498 claims crystalline hydrates in defining "pharmaceutically acceptable

salts," Appx00422 (bottom compound) and Appx00427 (60:5), and Merck concededly did not reduce any hydrate form of sitagliptin to practice before the publication of WO '498, Appx00046. Nevertheless, the Board said Merck did not need to reduce hydrates to practice to antedate WO '498. That is wrong under circuit law. To antedate WO '498, Merck was required to show that it reduced to practice as much as WO '498 revealed of the "claimed invention[s]" prior to WO '498's publication date. *In re Clarke*, 356 F.2d 987, 991 (C.C.P.A. 1966). The Board's holding on this point is so wrong that Merck does not even defend it. Instead, Merck argues at length about how WO '498 does not teach the specific crystalline monohydrate claimed in Claim 4 of the '708 Patent. But Claim 4 has never been at issue for antedation, so this entire discussion is completely beside the point.

As for enablement, Merck just echoes the same legal errors made by the Board. It ignores the presumption of enablement and ignores its own burden to rebut that presumption with evidence of non-enablement. It instead points to the absence of evidence *from Mylan* supporting enablement as evidence that WO '498 is not enabled. Merck Br. 54. But that argument flies in the face of precedent. WO '498 is presumed enabled, and it is *Merck's burden* to come forward with evidence to defeat that presumption. *Impax*

*Lab'ys, Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366, 1382 (Fed. Cir. 2006). Critically, Merck has never explained—much less offered evidence showing—how WO '498 is not enabled under this Court's eight-factor test from *In re Wands*, 858 F.2d 731 (Fed. Cir. 1988). Indeed, there is no *Wands* analysis anywhere in the record—not even in the Board's final written decision. Merck cannot possibly have met its burden to overcome the presumption of enablement if it did not even engaged the relevant legal framework.

Based upon its defective antedation ruling, the Board rejected Mylan's obviousness challenge to Claims 1-2, 17, 19, and 21-23. So reversing the Board's antedation ruling means the Court should also vacate its obviousness holding on those claims. It should also reverse the Board's obviousness holding with respect to Claims 3 and 4. Strong evidence shows that Claims 3 and 4 would be obvious over WO '498 and supporting prior art. Merck does nothing but repeat the Board's flawed reasoning in defense of these claims.

This case presents a straightforward example of anticipation and obviousness. The Board's decision should be reversed in full.

# ARGUMENT

## I. WO ′498 AND THE ′871 PATENT ANTICIPATE THE SITAGLIPTIN DHP SALT CLAIMED BY THE ′708 PATENT.

### A. The Board and Merck Are Wrong on the Law.

The Board got the law wrong in rejecting Mylan's anticipation argument. So too does Merck in defending the Board's decision. It mischaracterizes this case as one involving nothing but a broad or undefined genus (Formula I) that requires the skilled artisan to envision hundreds (or even millions) of salts in order to anticipate 1:1 sitagliptin DHP. Merck Br. 35-36. Merck claims that the breadth of this genus is dispositive of Mylan's anticipation argument.

But Merck ignores the fact that WO ′498 expressly teaches sitagliptin and its "pharmaceutically acceptable salts." It then invites skilled artisans to make these salts using one of eight "particularly preferred" salts, which includes phosphoric acid. From here, all the skilled artisan would need to envision is the stoichiometry. Even under Merck's view of things, the stoichiometry is limited by the number of potential sites on sitagliptin that can accept a proton (up to two) and the number of protons that phosphoric acid has to donate (up to three). *See* Mylan Opening Br. 30-32. Merck acknowledges that, in light of these facts, there are only four possible

stoichiometries that could form for sitagliptin, one of which would be the 1:1 salt of sitagliptin DHP. Merck Br. 36.

True, a "disclosure of a broad genus does not necessarily specifically disclose a species within that genus." *Perricone*, 432 F.3d at 1377. But this case involves *specific* disclosures that significantly narrow the broad genus disclosed in WO '498. These "specific disclosure[s], even in a list, make[] this case different from cases involving disclosure of a broad genus without reference to the potentially anticipating species." *Id.* That is because specific disclosures lead the skilled artisan "to derive a class of compounds of lesser scope than the genus actually disclosed in the reference on the basis of preferences ascertainable from the remainder of the disclosure." *In re Schaumann*, 572 F.2d 312, 316 (C.C.P.A. 1978). So though Merck is right that an envisioning analysis needs to "consider the full 'class of compounds' the 'reference discloses,'" Merck Br. 37 (quoting *Impax Lab'ys, Inc.*, 468 F.3d at 1383), it is wrong that the relevant "class" in this case is the "broad genus" encompassing hundreds (or millions) of compounds. *Perricone*, 432 F.3d at 1377. It is the "class of compounds of lesser scope" created by the "specific disclosure" of sitagliptin and phosphoric acid. *Id.*

None of the cases relied upon by Merck in its brief hold to the contrary. They all involve disclosure of a broad genus without any specific disclosures that would narrow the class that the skilled artisan would need to analyze. Consider *Impax Laboratories, Inc. v. Aventis Pharmaceuticals, Inc.* The Court considered whether two pieces of prior art enabled a particular compound (riluzole) for purposes of anticipation. 468 F.3d at 1382-83. One disclosed a broad formula *and* specifically identified riluzole as a species of the formula; the other just disclosed the formula and "d[id] not identify riluzole by name." *Id.* at 1383. The Court concluded that the district court erred in finding the former piece of prior art not enabled (and thus not anticipatory). *Id.* But it affirmed the finding of non-enablement as to the latter piece of prior art. *Id.* Like the former piece of prior art from *Impax*, WO '498 exemplifies sitagliptin as a species of the broader genus of Formula I.

*Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 471 F.3d 1369 (Fed. Cir. 2006), is also revealing of the fallacy of Merck's position. There, the Court distinguished *In re Petering* by observing that: "In *Petering*, the prior art disclosed a limited number of specific preferences from a specifically defined group . . . As a result, *Petering* actually disclosed to one skilled in the art a limited class of only some 20 compounds," including the potentially

anticipatory species. *Eli Lilly & Co.*, 471 F.3d at 1376 (citing *In re Petering*, 301 F.2d 676 (C.C.P.A. 1962)). As Mylan explained in its opening brief (at 30-33), the disclosures in WO ′498 are analogous to those in *Petering*.

Unable to contest this settled law, Merck complains (at 38) about the supposed "absence of emphasis on sitagliptin" in the prior art. Because sitagliptin is exemplified along with 32 other compounds (with no special "emphasis"), Merck accuses Mylan (at 37) of relying upon "hindsight anticipations" to "pluck[ ] sitagliptin phosphate salts out of a much broader disclosure and focusing solely on them." (Internal quotation marks omitted.) But "emphasis" is not necessary. This Court has squarely "reject[ed] the notion" that a teaching in the prior art "cannot anticipate because it appears without special emphasis in a longer list." *Perricone*, 432 F.3d at 1376. "To the contrary, the disclosure is prior art to the extent of its enabling disclosure." *Id.*[2] That makes sense. "The anticipation analysis asks solely whether the prior art reference discloses and enables the claimed invention, and not how the prior art characterizes that disclosure or whether alternatives are also

[2] And the disclosures of WO ′498 are presumed enabled—a presumption that Merck has completely failed to rebut. *See infra* Part II.

disclosed." *Hewlett–Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1324 n.6 (Fed. Cir. 2003).

With nothing else to argue, Merck makes a half-hearted forfeiture argument, claiming in a two-sentence paragraph that Mylan failed to make its envisioning argument below. Merck Br. 36. That is plainly wrong. Mylan forcefully argued below that Claims 1-3, 17, 19, and 21-23 were anticipated by WO ′498 under the envisaging doctrine. During oral argument, the Board asked Mylan to confirm that its envisaging argument extended to the 1:1 stoichiometry, which it did. Appx09787-09788. The Board clearly understood Mylan's position, as it squarely addressed it in the final written decision. Appx00029-00035. Notwithstanding its forfeiture argument, Merck references this portion of the Board's holding multiple times in its brief (*e.g.*, at 19-20, 34-35, 44).

### B. Under the Correct Legal Standard, the Board's Anticipation Analysis Is Unsustainable.

Viewed through the appropriate legal lens, the Board's anticipation holding is untenable. WO ′498 claims sitagliptin and its pharmaceutically acceptable salts—particularly salts formed using phosphoric acid. From the disclosures in WO ′498, a skilled artisan could immediately envisage the 1:1

stoichiometry as part of a defined, limited class of possible stoichiometries. Mylan Opening Br. 29-33. Merck offers three arguments to the contrary, none of which is persuasive.

*First*, Merck claims that Mylan's position is not based upon envisaging the 1:1 stoichiometry, but instead "selectively piecing together disparate disclosures in WO '498 and combining them with general knowledge of chemistry." Merck Br. 39. That argument is doubly flawed. To begin with, combining elements recited in two lists that are explicitly connected by the specification is hardly "selectively piecing together disparate disclosures." WO '498 claims sitagliptin and its pharmaceutically acceptable salts in one list and tells skilled artisans that phosphoric acid is "[p]articuarly preferred" for creating such salts in another.[3] *See* Mylan Opening Br. 6-8. Indeed, the '708 Patent states outright that WO '498 "describes" and "discloses" sitagliptin, and that "[p]harmaceutically acceptable salts of this compound

[3] And for this reason, Merck's reliance upon *In re Ruschig*, 343 F.2d 965 (C.C.P.A. 1965), is misplaced. *E.g.*, Merck Br. 40. Anticipation in this instance does not involve "mechanistic dissection and recombination" of the teachings of WO '498. 343 F.2d at 974. It merely involves doing what the prior art tells the skilled artisan to do.

are generically encompassed within the scope of" this description. Appx00084 (1:49-57).[4]

In this regard, WO '498 is no different than the anticipatory art from *Wrigley*, which required the skilled artisan to combine explicitly recited cooling agents from one list with explicitly recited flavoring agents from another. *Wm. Wrigley Jr. Co.*, 683 F.3d at 1360-61. Critically, the Court in *Wrigley* rejected the proposition that "a prior art reference is not anticipatory if one of ordinary skill in the art would be required to pick items from two lists of components in order to assemble the invention"—which is exactly what Merck argues here. *Id.* at 1361-62.

Merck is also wrong in suggesting (at 39) that a prior-art teaching cannot anticipate a later claim if it requires the skilled artisan to use "general knowledge of chemistry." "[I]t is proper to take into account not only specific teachings of the reference but also the inferences which one skilled in the art would reasonably be expected to draw therefrom." *In re Preda*, 401 F.2d 825,

---

[4] Merck tries to downplay this statement, pointing to the use of the word "generically." Merck Br. 12. But, regardless of whether WO '498 "generically" claims pharmaceutically acceptable salts of multiple compounds, that does not change the fact that this "generic" disclosure applies specifically to sitagliptin—a fact that Merck does not and cannot dispute.

826 (C.C.P.A. 1968). These inferences are the product of the skilled artisan's background and expertise in the relevant field—what Merck dismissively calls "general knowledge of chemistry." Indeed, the prior art here expressly invites skilled artisans to apply their knowledge to form the claimed pharmaceutically acceptable salts. Appx00377 (10:16-17) ("It will be understood [to those skilled in the art] that, as used herein, reference to the compounds of Formula I are meant to also include the pharmaceutically acceptable salts.").

*Second*, Merck argues (at 41-42) that WO '498 does not disclose a sitagliptin phosphate salt because the reference does not explicitly illustrate sitagliptin and phosphoric acid combined as a salt. As Merck sees things, this means that WO '498 does not "disclose all elements of the claim" as "arranged as in the claim." *Id.* (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008)). But the requirement that all elements be "arranged as in the claim" does not mean that the anticipatory reference must "expressly spell out all the limitations arranged or combined as in the claim." *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015) (internal quotation marks omitted). Rather, "a reference may still anticipate if that reference teaches that the disclosed components or

functionalities may be combined and one of skill in the art would be able to implement the combination." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1344 (Fed. Cir. 2016).

That is exactly what WO '498 does. It discloses the elements (sitagliptin and phosphoric acid), and it teaches that the elements can and should be combined to create a pharmaceutically acceptable salt. The skilled artisan would be more than capable of doing so. The evidence shows that the 1:1 sitagliptin DHP salt was first made doing a simple, automated salt screen by a person with a skill level below that of the skilled artisan. Appx08908-08912 (27:20-31:22), Appx08920-08921 (39:13-40:22), Appx08923-08925 (42:18-44:15), Appx08928-08939 (47:46:2-58:12); *see also* Appx01072-01073 (¶¶16–19). And Dr. Matzger allegedly created non-1:1 sitagliptin DHP salt using "conventional techniques." Appx00033.

Against this backdrop, Merck's bare plea to the supposed unpredictability of salt formation is legally inadequate. *Pfizer, Inc. v. Apotex Inc.*, 480 F.3d 1348, 1364, 1366 (Fed. Cir. 2007). Merck suggests (at 60-61) that this Court limited *Pfizer* to its facts in *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075 (Fed. Cir. 2008). But all the Court said in *Sanofi* is that the district court in that case did not clearly err in distinguishing the facts of that

particular case from those in *Pfizer*. *Id.* at 1089. Like the art in *Pfizer*, the specific disclosures of WO ’498 “narrowed the possible salts to only a few including the claimed [sitagliptin DHP].” *Id.* (distinguishing *Pfizer* on these grounds).

*Third* and finally, Merck claims that a skilled artisan would not envision the 1:1 stoichiometry for sitagliptin DHP in all events. It selectively quotes snippets from the record that it believes support its position. Significantly, however, Merck does not dispute (indeed, it agrees) that the class of possible stoichiometries for sitagliptin DHP is limited by the number of sites at which sitagliptin can accept a proton (up to two) and the number of protons phosphoric acid might donate (up to three, but realistically only two). Merck Br. 36. That means there are only four possible stoichiometries, the most likely of which is 1:1. In light of these facts, it is difficult to imagine how the 1:1 stoichiometry is not envisaged or is anything but anticipated. The Board erred in holding to the contrary.

Merck claims (at 34) that Dr. Chorghade never opined that a skilled artisan would immediately envisage a 1:1 sitagliptin DHP salt. That is wrong. Dr. Chorghade said he “agree[d]” with Dr. Matzger that looking at Example 7, when replacing phosphoric acid for HCl, a skilled artisan “‘can

imagine that the [1:1 phosphoric acid salt] would exist.'" Appx09088 ¶ 9 (quoting Appx08489-08490 (146:21-147:5)). The fact that Dr. Chorghade couched his statement in terms of "agree[ing]" with someone else is irrelevant. It is still an expression of Dr. Chorghade's opinion. It is also irrelevant that Dr. Matzger tried to walk back his concession during his deposition; he said that he could "imagine" a 1:1 sitagliptin DHP salt based on Example 7, and that is sufficient. Appx08490 (147:11-17).

Merck argues that Example 7 is irrelevant because it exemplifies a sitagliptin salt formed with hydrochloric acid, as opposed to phosphoric acid. Merck Br. 45-47. Merck seemingly believes teachings from the prior art only matter if they "actually disclose[]" a sitagliptin DHP salt. *Id.* Once again, that proposition is directly contradicted by Federal Circuit law: "Anticipation is established when one skilled in the art would reasonably understand ***or infer from the prior art*** reference's teaching that every claim limitation was disclosed in that single reference." *Genentech, Inc. v. Hospira, Inc.*, 946 F.3d 1333, 1340 (Fed. Cir. 2020) (cleaned up, emphasis added).

Insofar as Dr. Chorghade focused on the 1:1 sitagliptin DHP salt, Merck's own evidence demonstrates (at best) that the other stoichiometries (1:2, 2:1, and 3:2) exist. Merck Br. 36. Significantly, Dr. Matzger allegedly

formed these salts using what the Board called "conventional techniques." Appx00033. Because a skilled artisan could identify these stoichiometries from the teachings of WO '498 without "undue experimentation," they are anticipated by the prior art. *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) ("As long as the reference discloses all of the claim limitations and enables the subject matter that falls within the scope of the claims at issue, the reference anticipates—no actual creation or reduction to practice is required.") (Internal quotation marks omitted.).

* * *

At bottom, the Board (and Merck) are wrong on the law of anticipation. Those legal errors are fatal to the Board's anticipation analysis. It must be reversed.

## II. Claims 1-2, 17, 19, and 21-23 Do Not Antedate WO '498.

### A. WO '498 Claims Hydrates of Sitagliptin DHP.

The Board's flawed antedation holding presents a separate ground for reversal. It concluded that Claims 1-2, 17, 19, and 21-23 of the '708 Patent antedate WO '498 because Merck had reduced to practice as much as WO '498 showed of these claims. To antedate WO '498 with regard to these claims, Merck must show that "the invention was conceived before the

effective date of the reference, with diligence to actual or constructive reduction to practice." *In re Steed*, 802 F.3d 1311, 1320 (Fed. Cir. 2015). It must show that it reduced to practice at least as much as "the reference shows of the claimed invention" before the reference's publication date. *In re Clarke*, 356 F.2d at 991.

Here, Claim 1 (upon which the other claims are dependent) recites 1:1 sitagliptin DHP "***or a hydrate thereof.***" Appx00091 (15:64-16:16) (emphasis added). WO '498 claims sitagliptin and its "pharmaceutically acceptable salts"; and it identifies phosphoric acid as a "[p]articularly preferred" acid for making such salts; it defines "pharmaceutically acceptable salts" to include hydrates. Appx00376 (9:27-34). Critically, Merck *admitted* it did not reduce *any* hydrate of sitagliptin DHP to practice until about two months *after* the publication of WO '498; prior to the publication of WO '498, it had produced nothing but anhydrous forms of the compound. Appx00046. Despite all of this, the Board held that Merck did not need to reduce hydrates to practice in order to antedate WO '498 because WO '498 supposedly does not disclose hydrates. Appx00048. As Mylan explained in its opening brief (at 42-47), that is wrong.

Merck's defense of the Board's decision is baffling. Instead of addressing whether WO '498 claims sitagliptin hydrates generally, Merck spends five pages (from 49 to 53) arguing that WO '498 does not reveal the specific crystalline monohydrate recited in Claim 4 of the '708 Patent. But that is completely irrelevant. Merck never tried to antedate WO '498 for Claim 4. Mylan never argued that WO '498 standing alone revealed sitagliptin DHP in a crystalline monohydrate form. And because neither party argued it, the Board did not address this issue. Merck's failure to address the relevant issue is a tacit admission that it has nothing to say.[5]

Merck also complains that the reference to hydrates is not specific to sitagliptin and encompasses potentially "millions" of other salts described by WO '498. Merck Br. 51. But as discussed above, that is beside the point. It does not matter how many inventions are claimed in the prior art, so long as

---

[5] In passing, Merck suggests that WO '498 lacks an adequate written description for hydrates of sitagliptin DHP, and it therefore need not reduce hydrates to practice in order to antedate WO '498. Merck Br. 52-53 (citing *AbbVie Deutschland GmbH v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1299 (Fed. Cir. 2014), and *Bocciarelli v. Huffman*, 232 F.2d 647, 651 (C.C.P.A. 1956)). Unsurprisingly, Merck cites no case demonstrating that a patent owner can attack its own written description in order to defeat its own patent-defeating prior art. To be sure, a teaching in the prior art must be enabled before a patent owner is required to reduce it to practice for antedation purposes. That issue is separately addressed below. *See infra* § II.B.

the relevant invention is among them. Here, WO ’498 teaches sitagliptin “and its pharmaceutically acceptable salts,” which encompasses hydrates. That is enough to satisfy *Clarke*, and Merck does not cite a single case suggesting otherwise.

### B. WO ’498 Is Presumptively Enabled, and Merck Never Rebutted that Presumption.

The Board further held that Merck was not required to reduce hydrates to practice in order to antedate WO ’498 because WO ’498 is not enabling of hydrates. Appx00049-00052. In reaching this conclusion, the Board emphasized “a complete *absence of evidence or guidance* in WO ’498 about making such hydrates.” Appx00049 (emphasis added). But as Mylan explained in its opening brief (at 48-51), the Board’s analysis runs afoul of two key legal principles. *First*, WO ’498 is presumptively enabling of hydrates. *In re Antor Media Corp.*, 689 F.3d 1282, 1287 (Fed. Cir. 2012) (“[B]oth claimed and unclaimed materials disclosed in a patent are presumptively enabling.”). And *second*, it was Merck’s burden—not Mylan’s—to come forward with evidence rebutting the presumption. *Impax Lab’ys, Inc.*, 468 F.3d at 1382. By holding against Mylan the absence of evidence *supporting*

enablement, the Board effectively ignored the presumption of enablement and relieved Merck of its burden to disprove the presumption.

Merck disputes neither the presumption of enablement, nor Federal Circuit law placing the burden to rebut the presumption on the patent owner. It barely mentions the former and says nothing at all about the latter. Instead, Merck merely echoes (at 54) the Board's flawed analysis, complaining in bolded text that "Mylan presented ***no evidence*** of enablement." (Emphasis in original.) According to Merck, the lack of affirmative evidence of enablement is itself "surely persuasive when considering whether the reference's disclosures are sufficient to enable a personal of ordinary skill in the art to carry out the invention." *Id.* (cleaned up).

Far from it. What Merck needed to do in order to overcome the presumption of enablement was to demonstrate that WO '498 did not "teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1362 (Fed. Cir. 2018). And to do that, Merck needed

to engage the eight-factor analysis set forth in *In re Wands*. 858 F.2d at 737.[6] The Board did not cite (much less analyze) the *Wands* factors in its final written decision. Merck did not cite (much less analyze) *Wands* in its papers below. Even in its brief to this Court, *Wands* gets little more than a passing citation (at 56). It is hard to fathom how Merck could have possibly satisfied its burden to overcome the presumption of obviousness when neither it nor the Board engaged the relevant legal standard. Crediting Merck's argument on appeal and affirming the Board's reasoning would gut the presumption of enablement and shift away the patent owner's burden to demonstrate non-enablement.

Merck says (at 54-55) that it offered some evidence of non-enablement. It points to evidence purportedly showing the efforts it undertook to create the crystalline monohydrate recited in Claim 4 of the '708 Patent. But, again, Merck did not try to antedate WO '498 for Claim 4. Whatever evidence Merck may have about the challenges it faced in preparing a specific

---

[6] The *Wands* factors include: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the relative skill of those in the art, (5) the nature of the invention, (6) the state of the prior art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. 858 F.2d at 737 (Fed. Cir. 1988).

crystalline monohydrate is not relevant to whether WO ’498 enables hydrates generally. That leaves Merck to complain about the general “unpredictability” of creating hydrates, which is not enough to carry the day standing alone and divorced from the *Wands* analysis. *See Pfizer, Inc.*, 480 F.3d at 1366.

* * *

WO ’498 defines “pharmaceutically acceptable salts” to include hydrates, and that definition applies to sitagliptin DHP, which means that Merck needed to show it reduced hydrates to practice before the publication date of WO ’498. It concededly did not do so. The Board’s decision to excuse Merck from satisfying its burden was legal error, and so too was its decision to ignore the presumption of enablement. The Board’s antedation holding should be reversed in light of these legal errors.

## III. CLAIMS 3 AND 4 OF THE ’708 PATENT ARE OBVIOUS.

The Board rejected Mylan’s obviousness argument as to Claims 1-2, 17, 19, and 21-23 based solely upon its antedation holding. Appx00052. Those two conclusions should fall together. As for Claims 3 and 4, the parties agree that WO ’498 is prior art. Together with Bastin, WO ’498 renders Claim 3

obvious. And together with Bastin and Brittain, WO ’498 renders Claim 4 obvious.

### A. Claim 3 Is Obvious Over WO ’498 and Bastin.

Claim 3 recites a sitagliptin DHP salt in the (S)-configuration. WO ’498 renders sitagliptin DHP in a 1:1 stoichiometry obvious for all the reasons that WO ’498 anticipates these elements. *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1363 (Fed. Cir. 2008) (“[A]nticipation is the epitome of obviousness[.]”). Bastin reinforces WO ’498 by identifying phosphoric acid as a prime candidate to combine with a weakly basic drug like sitagliptin and further encourages skilled artisans to depart from WO ’498’s use of hydrochloric acid with sitagliptin. As for the (S)-configuration, a skilled artisan would know that a molecule like sitagliptin phosphate can exist only as one of two optical isomers—one with an (R)-configuration and one with an (S)-configuration. Because a skilled artisan could envisage these configurations, WO ’498 anticipates the claimed (S)-configuration and therefore renders it obvious.

Merck’s arguments in defense of the Board’s decision are unpersuasive. It argues that a skilled artisan would not be motivated to make sitagliptin DHP or to do so in the (S)-configuration. Merck Br. 56-59.

Merck repeats many of the same arguments it made in defense of the Board's anticipation holding, which fail for reasons already discussed.

Merck further argues that a skilled artisan would have no reasonable expectation of success to create a 1:1 sitagliptin DHP in the (S)-configuration. Not so. Merck's argument here is again grounded in the notion that salt formation is unpredictable and Merck's wrongheaded attempt to cabin *Pfizer*. Those arguments fail for all the reasons previously discussed.

### B. Claim 4 Is Obvious Over WO '498 and Brittain.

Claim 4's limitations are likewise obvious. The Board held that a skilled artisan would not have reasonably expected to succeed at creating a crystalline monohydrate form of sitagliptin phosphate, would not have been motivated to make it, and would not have expected the properties that the form showed. These conclusions ignore the teachings of WO '498, which explicitly tells skilled artisans that the described salts can exist in a crystal structure and as hydrates. Moreover, Brittain teaches that one-third of pharmaceuticals can form crystalline hydrates and that monohydrates are the most common hydrate. Based upon these teachings, a skilled artisan would have had a reasonable expectation of success. In addition, a skilled artisan would have had sufficient motivation because, as Brittain

emphasizes, hydrate forms impact the development process and dosage form of pharmaceuticals.

The Board's analysis on unexpected results of Claim 4 defied this Court's precedent because it failed to compare the claimed sitagliptin phosphate crystalline monohydrate with the "closest prior art compound"— a sitagliptin phosphate salt in a different form. *Millennium Pharms., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1368 (Fed. Cir. 2017).

Merck's defense of the Board's decision consists entirely of repeating the Board's analysis and calling it correct. Mylan has explained why that reasoning is wrong in its opening brief (at 57-62). For the sake of brevity and to avoid repetition, Mylan refers back to that explanation.

## CONCLUSION

The Board's final written decision should be reversed.

Date: March 21, 2022

Respectfully submitted,

/s/ Deepro R. Mukerjee

Eric T. Werlinger
KATTEN MUCHIN ROSENMAN LLP
2900 K Street, NW – Suite 200
Washington, DC 20007
Tel.: 202-625-3500
eric.werlinger@katten.com

Deepro R. Mukerjee
Lance A. Soderstrom
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022
Tel.: 212-940-6330
deepro.mukerjee@katten.com
lance.soderstrom@katten.com

Jitendra Malik
KATTEN MUCHIN ROSENMAN LLP
550 S. Tryon Street – Suite 2900
Charlotte, NC 28202
Tel.: 704-444-2000
jitty.malik@katten.com

*Counsel for Appellant Mylan Pharmaceuticals Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Opening Brief of Appellant complies with the word limitation of Fed. Cir. R. 32(b)(1) because it contains 5,174 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in Microsoft Word 2016 using a proportionally spaced typeface (Book Antiqua) in 14-point font.

Dated: March 21, 2022 /s/ Deepro R. Mukerjee

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be filed on March 21, 2022, with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's electronic filing system, which will send a notice of electronic filing to all attorneys appearing in this matter.

/s/ Deepro R. Mukerjee